CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
August 29, 2024
LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| TIMOTHY DEXTER WALTON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:23-cv-00436 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| WVRJ MANAGERIAL | ) | By:  Hon. Thomas T. Cullen |
| ADMINISTRATION STAFF, *et al.*, | ) | United States District Judge |
| | ) | |
| Defendants. | ) | |

_____

Plaintiff Timothy Dexter Walton ("Walton"), a Virginia inmate proceeding *pro se*, filed this civil rights complaint under 42 U.S.C. § 1983. Walton alleges that, while he was confined at the Western Virginia Regional Jail ("WVRJ"), the defendants allowed another inmate to steal funds from Walton and then took various actions to retaliate against Walton for filing grievances and a state-court lawsuit about the alleged theft. Defendant Shawn Body has filed a motion to dismiss, and Defendants Superintendent David Cox, Captain Willie Smith, Sergeant Todd Wilson, Sergeant Kristopher Johnston, Lieutenant Richard Haines, Officer Parker Beard, and Officer Anthony Jones have jointly filed a separate motion to dismiss. Walton has responded to both motions, making them ripe for consideration.[1] Walton has also

---

[1] Walton has filed a motion asking the court to compel the defendants to provide him with documentation and pictures that he had stored on a jail-issued tablet device. (ECF No. 33.) The court denied a prior version of this motion as disproportional to the needs of the case and "too vague or broad for the court to conclude that they were relevant to any party's claim or defense." (*See* ECF No. 32.)
   From the previously stored tablet data, Walton seeks (1) copies of all emails to or from the grievance coordinator from April 16, 2022, until the present and (2) "pictorial data" of his "land and property that are relevant to other legal proceedings pending before other courts." (ECF No. 33.) Walton also seeks production of jail and pod video footage of "John Doe officers packing up, giving away and removing [Walton's] property from [his] cell" at unspecified times on January 26 and September 23, 2023. (*Id.*) For reasons discussed in this Memorandum Opinion, the court concludes that Walton's allegations about interference with his grievances and his personal property do not state constitutional claims actionable under § 1983. Furthermore, the court

filed two motions seeking to add new defendants and retaliation claims about different time periods to his Complaint. After review of the pleadings, the court concludes that the motions to dismiss must be granted and Walton's motions to amend must be denied.

## I.

Walton's Complaint is devoid of a coherent or chronological description of the relevant events underlying his claims. Liberally construing the Complaint, copies of state-court records attached to Defendant Body's motion to dismiss, court records, and other verified submissions from Walton, the court understands the relevant factual allegations as follows.

WVRJ has an automated computerized telephone system that inmates may utilize by inputting an identification ("ID") number and a PIN.[2] Between April 16 and 30, 2022, Walton alleges that Inmate Brian Brim "robb[ed Walton] and [his] account of one hundred and fifty (150.00 dollars." (Compl. 3 [ECF No. 1].)[3] Brim then apparently obtained and used Walton's ID number and PIN to avail himself of Walton's account for his own benefit for a total of $150.

---

finds no justification to order discovery of information related to Walton's cases pending in other courts. Moreover, no part of the WVRJ grievance process is at issue here. The court will therefore deny Walton's current motion to compel for these reasons as well as the reasons noted in the court's prior Order. (*See* ECF No. 32.)

[2] In ruling on a motion to dismiss, the court may consider documents attached to a motion to dismiss if those documents are integral to the Complaint and are authentic. *Sec'y of State for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Walton has not challenged the authenticity of the documents from Walton's state-court lawsuit that Body attached to his motion to dismiss. In an affidavit that Body filed in that state-court lawsuit, Body stated that he was employed by Global Tel Link ("GTL") as Site Administrator at WVRJ and that each inmate may access his WVRJ telephone account only by inputting an identification number and PIN. (Mem. Supp. Mot. Dismiss Ex. C, at 9 [ECF No. 12-3].)

[3] For the sake of clarity, the court will cite to page numbers as assigned to the pleadings by the court's electronic filing system.

Walton allegedly tried to bring criminal charges and grievances at the jail about Brim's action, but these efforts were fruitless. In September 2022, Walton brought a lawsuit in the Roanoke County General District Court Small Claims Division, Case No. GV2200163-00, against Brim and others—including Body as WVRJ Site Administrator for telephone services—seeking to recover his $150. Body moved for summary judgment, and the General District Court granted that motion and dismissed the case in June 2022. (*See* Mem. Supp. M. Dism. Corrected Ex. D [ECF No. 12].) Online state court records indicate that Walton appealed that decision to the Roanoke County Circuit Court in July 2023, Case No. CL23000923-00, and a final order concluded that appeal on October 10, 2023.

In his Complaint, Walton asserts that Brim's theft of his account funds occurred because Body, Cox, and unnamed WVRJ "administrative heads and staff of civilian and correctional officers in charge of overseeing the day[-]to[-]day operational duties" ("administrative defendants") at the jail "were and are grossly . . . negligent" as supervisors and in "control of and over equipment" (Claim #1). (Compl. at 3 [ECF No. 1].) Walton asserts that because they failed at "safeguarding and protecting [him] and [his] inmate account from illegal pilfering and fraudulent theft of monies . . . through the jail's automated computerized telephone system," they "aided and abetted in collusion, complicity and helped inmate Keith Brim in and at robbing Walton."[4] (*Id.*) Walton also alleges that these defendants, on an

---

[4] Walton's § 1983 Complaint does not explain how he believes Brim obtained access to his telephone account. The copies of the state-court documents attached to Body's motion to dismiss, however, provide more detail. Walton alleges that during booking at WRVJ, staff gave him "a postcard size card with I.D. numbers written on it in big black boldface block print" that anyone "half blind could see to read thirty (30) feet away)." (Mem. Supp. M. Dism. Exhibit B, at 1 [ECF No. 12-2].) Walton asserts that "anyone using the eleven[-]digit I.D. numbers written on these jail[-]issued postcards can activate the institution[']s computerized debit telephone service system and fraudulently make telephone calls." (*Id.*) Then, jail staff assigned Walton to share a cell with Brim for a week, after which the inmates were moved to different housing areas. Walton alleges that between

unspecified date, "deliberately trashed, discarded and/or gave away [his] personal property," including several sodas, two writing pens, a jar of Vaseline, a jar of lotion, shower shoes, and a chess set. (*Id.* at 3-4.) Walton also contends that Body, Colonel Cox, and the administrative defendants conspired to impede his "timely access to the jail's gr[ie]vance procedure, the police and magistrate office and the courts," hindering his efforts "to file criminal and civil charges." (*Id.* at 4.)

In a separate count, Walton contends that Cox and the administrative defendants and others (Captain Willy Smith, Lieutenant Haines, Sergeant Todd Wilson, Sergeant Kristopher Johnston, Laundry Officer Jones, Disciplinary Officer Parker Beard, and other Jane and John Doe correctional officers) engaged "in a free-range systematic conspiracy and campaign of harassment and cruel and unusual punishment, intimidation and threats" (Claim #2). (*Id.*) Generally, Walton alleges that after his complaints and his state-court lawsuit about the theft of his telephone funds, the defendants retaliated against him through various actions. (*Id.* at 2.) These retaliatory acts allegedly included: unnamed officers taking his therapeutic mattress provided for his back injury; Laundry Officer Jones giving him "raggedy half sheets and towels and los[ing] [his] clothes for weeks," which "forc[ed] him to not shower or change into clean clothes for days and weeks" and deprived him of "proper sleep due to no sheets covering the thin plastic mattress"; unnamed officers mishandling his legal mail by copying it onto his kiosk tablet; unnamed officers "stopping the courts procedural due process of serving Inmate Keith Brim" a copy of "the warrant in debt subpoena" for stealing Walton's monies; unnamed

---

April 15 and May 10, 2022, he could not access the kiosk or tablet service system and that during this time, Brim colluded with Body and two other persons to use Walton's telephone account without his consent.

officers delivering legal mail in the early morning hours, against jail policy; unnamed officers keeping him "locked down inside [his] cell for two and three days" without any disciplinary charge; unnamed officers allegedly led by Sgt. Johnston coming to Walton's cell at two or three in the morning and playing with "taser guns," making him fear for his safety because he had made unspecified complaints to Colonel Cox; and unnamed officers refusing to notarize legal documents unless "they were allowed to read them first to see if they contained complaints about the jail administration and staff." (*Id.* at 4–6.) Walton also alleges that on January 26, 2023, "several neo Nazi Gestapo skinheaded klan members led by a John Doe lieutenant" "jumped on and physically assaulted him" after he asked for a coat to wear to court. (*Id.* at 6.) In another incident, unspecified officers allegedly threw Walton "in the hole (isolation) with [his] personal property getting packed up by officers who deliberately on purpose left, discarded, trashed and/or gaveaway [*sic*] [his] personal property items." (*Id.* at 6.) Walton complains that he has not been reimbursed for the lost property items, although Lieutenant Haines allegedly said that he would be reimbursed. As relief in this action, Walton demands monetary damages and reimbursement for his personal property items.

## II.

A motion to dismiss under Rule 12(b)(6) examines the legal sufficiency of the facts alleged on the face of a plaintiff's pleading. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). In considering a motion to dismiss, all well-pleaded factual allegations contained in a complaint are to be taken as true and viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of

action," and it must allege facts specific enough to raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).[5] To state an actionable claim, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face," rather than merely "conceivable." *Id.* at 570.

The court is required to liberally construe complaints filed by plaintiffs proceeding pro se. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Pro se complaints are held to a less stringent standard than those drafted by attorneys. *Id.* This requirement of liberal construction does not mean, however, that the court should ignore a clear failure to plead facts that set forth a cognizable claim. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Section 1983 permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his constitutional rights. *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013). ). "[A] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* at 676; *Langford v. Joyner*, 62 F.4th 122, 125 (4th Cir. 2023) (upholding dismissal of civil rights action where complaint made only collective allegations against all "defendants," without identifying how each individual Defendant personally interacted with plaintiff or acted personally to violate plaintiff's Eighth Amendment rights).

---

[5] The court has omitted internal quotation marks, alterations, and citations here and throughout this Memorandum Opinion, unless otherwise noted.

## III.

### A.

Liberally construed, Walton's Claim 1 alleges that Body, Cox, and administrative defendants at the jail inadequately supervised the telephone system by which Brim stole finds from Walton's account and inadequately supervised officers who mishandled Walton's property items. These allegations fail to state any claim against Body, Cox, or the administrative defendants.

Walton's claims against Body fall well short of the *Iqbal* pleading standard. Simply put, he fails to provide any facts to establish a viable claim that Body's personal actions (or inactions) violated his constitutional rights.[6] Walton does not identify what Body did (or didn't do) in his role as Site Administrator that caused Brim to have unauthorized access Walton's telephone account. Indeed, Walton does not allege that Body had any responsibility for the postcards jail staff gave Walton during intake that included his ID number, let alone that Body had any obligation to safeguard Walton's account. Nor does Walton state any facts that, taken as true, would show that Body had any interaction with Brim, Cox, or the administrative related to Walton's account or its access numbers. Walton's Complaint is simply devoid of any facts that would show that Body took any action, or failed to take any action, that proximately caused harm to Walton. Moreover, the Complaint utterly fails to allege any actions by Body related to the loss of Walton's personal property items or his attempts at jail grievance

---

[6] As an alternative defense, Body's motion argues that the court should apply the abstention doctrine of *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), and its progeny. This defense was based on the fact that Walton's circuit court appeal of the state court action was still pending. That appeal has since been concluded. Therefore, the court does not find that the *Colorado River* abstention doctrine is applicable.

mechanisms. Rather, the claims against Body are built using nothing more than Body's job title and conclusory assertions without the requisite facts to support them. The court will grant Body's Motion to Dismiss as to all claims.

Walton has also failed to state facts to support his claims against Cox, whom he identifies as regional superintendent, or the administrative defendants. For the most part, Walton has not identified any individual persons within this group of administrative defendants. The Complaint refers to them as those "in charge of overseeing the day[-]to[-]day operational duties of running" the WVRJ—"John and Jane Doe administrative heads and staff of civilian and correctional officers." (Compl. 3 [ECF No. 1].) Moreover, Walton does not allege with any specificity that Cox or any other jail supervisor took or failed to take any action to cause the loss of monies from Walton's telephone account or how they acted to assist Brim in using monies stolen from Walton's account. Similarly, Walton does not provide any facts to support a claim that Cox or any other jail supervisor participated in or took action that caused the loss of his personal property items. Indeed, he does not even state when this loss of property apparently occurred.

Finally, the same kind of factual deficiencies exist with Walton's other asserted claims against Cox and the administrative defendants in Claim 1. He does not allege facts showing how Cox or other supervisory officials personally acted or conspired with each other to impede Walton's access to the WVRJ grievance procedure, the police, the magistrate's office, or the court system. His conclusory assertions are insufficient to state a claim.

Moreover, Walton fails to state any claim against Cox or any defendant as a supervisory official. Supervisory officials are not automatically liable for the unconstitutional conduct of

their subordinates under a theory of *respondeat superior*. *Iqbal*, 556 U.S. at 676. Rather, a plaintiff must state facts showing that: (1) the supervisor had "actual or constructive knowledge" that a subordinate's conduct posed a "pervasive and unreasonable" risk of constitutional injury to the plaintiff; (2) the supervisor's response to this knowledge was "so inadequate as to show deliberate indifference to or tacit authorization" of the potentially unconstitutional practices; and (3) there was an "affirmative causal link" between the supervisor's inaction and the constitutional injury the plaintiff suffered. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Specifically, the plaintiff must show that the supervisor had knowledge before the constitutional injury occurred that his subordinate's past behavior placed the plaintiff at risk. *Chavez v. Bailey*, No. 7:19CV00014, 2020 WL 2751899, at *7 (W.D. Va. May 27, 2020).

Walton failed to allege any facts that would meet the supervisory liability standard as to Cox or the administrative defendants. He does not cite any prior incident that put these defendants on notice of a danger that inmates like Walton would suffer constitutional deprivations of telephone monies, personal property after a cell reassignment, or problems accessing the WVRJ grievance procedure, the police, the magistrate's office, or the court system. Again, Walton fails to provide the necessary factual support for his asserted claims against these defendants.[7]

---

[7] In a response to the motion to dismiss, Walton asked the court to order that the named defendants provide him names for the administrative defendants he was unable to identify. (ECF No. 9.) The court construes this submission as a motion to compel discovery for purposes of service of process. At the time he filed this response/motion, no defendant had yet waived service, so no defendant was yet a party whom the court could direct to provide names. Moreover, for the reasons stated, even if Walton could name these supervisory defendants, he has failed to state facts to support any viable claim against any of them. Therefore, the court will deny the motion seeking to compel defendants to provide their names.

Furthermore, Walton has no viable claims regarding the alleged interference with his ability to use the grievance process. It is well-settled that "inmates have no constitutional entitlement or due process interest in access to a grievance procedure. An inmate thus cannot bring a § 1983 claim alleging denial of a specific grievance process." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017).

Finally, as to Claim 1, Walton has no § 1983 claim based merely on officers' alleged misdeeds regarding his personal property. An allegation that a person under color of state law intentionally or negligently deprived an inmate of property while acting outside the scope of official policy or custom cannot state an actionable claim under § 1983 if a meaningful post-deprivation remedy is available. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Walton possesses a post-deprivation remedy under Virginia law via the Virginia Tort Claims Act ("VTCA"). Va. Code §§ 8.01-195.3, *et seq.* "Section 1983 was intended to protect only federal rights guaranteed by federal law, and not tort claims for which there are adequate remedies under state law." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). Therefore, Walton cannot prevail under § 1983 based on an alleged property loss for which he can seek redress under VTCA. *See Artis v. Mapp*, No. 91-6016, 931 F.2d 54, 1991 WL 61299, at *1, (4th Cir. Apr. 24, 1991) (per curiam) (affirming with the modification dismissal of inmate's complaint about jail officials' deprivation of his property as frivolous because of availability of a post-deprivation remedy).

For these reasons, the court will grant the parties' Motions to Dismiss as to all parts of Claim 1. Moreover, the court will summarily dismiss all claims raised against the unnamed administrative defendants and staff under 28 U.S.C. § 1915A(b)(1) for failure to state a claim.[8]

## B.

In Claim 2, Walton alleges that the administrative defendants and defendants Smith, Haines, Wilson, Johnston, Jones, and Beard all conspired to retaliate against him in numerous and various ways for filing grievances and pursuing a state-court lawsuit about Inmate Brim's theft from his telephone account in April 2022. But Walton has not proffered any facts supporting claims of conspiracy or retaliation in this case.

To establish a civil conspiracy under § 1983, a plaintiff must allege facts that, if true, would establish that the defendants acted "jointly in concert and that some overt act was done in furtherance of the conspiracy, which resulted in [the] deprivation of a constitutional right." *Glassman v. Arlington Cnty.*, 628 F.3d 140, 150 (4th Cir. 2010) (quoting *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996)). The allegations must establish that each member of the alleged conspiracy shared the same conspiratorial objective. *Hinkle*, 81 F.3d at 421. A plaintiff's factual allegations must reasonably lead to the inference that the defendants came to a mutual understanding to try to "accomplish a common and unlawful plan." *Id.* A plaintiff's allegations must amount to more than "rank speculation and conjecture." *Id.* at 422.

Here, Walton has not alleged any facts suggesting that the defendants reached an agreement to violate his rights. Rather, Walton attempts to build a conspiracy claim from

---

[8] In any civil action where "a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," the court shall dismiss the complaint, or any portion of it, if it is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1).

footless conclusions and unsupported assertions that entirely fail to support a conspiracy claim against any defendant. *Iqbal*, 556 U.S. at 678. His conspiracy claims, therefore, will be dismissed.

His retaliation claims fare no better. To succeed on a § 1983 retaliation claim, Walton "must allege that (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct." *Martin v. Duffy*, 977 F.3d 294, 299 (4th Cir. 2020) (citing *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017)). A lapse of time between when the defendant learned of the plaintiff's grievance or lawsuit and the defendant's allegedly retaliatory action "negates any inference that a causal connection exists between the two," based merely on the timing of the events. *Hodges v. Meletis*, No. 22-6427, 2024 WL 3504387, at *7 (4th Cir. July 23, 2024) (published).

Walton's retaliation claims fail on the third prong of this legal standard. He simply fails to state any facts connecting the alleged retaliatory acts in Claim 2 with his grievances or his lawsuit about another inmate using his telephone account. None of the alleged retaliatory acts (insufficient laundry services, taking his special mattress, interfering with his legal mail or service on Inmate Brim, delivering mail after midnight, bringing tasers to his cell in the wee hours, refusing to notarize documents, assaulting him in January 2023, locking him in his cell for days at a time with no disciplinary reason, and losing his personal property items) include facts showing that any of the prison officials he names as defendants even knew about Walton's lawsuit or grievances. Similarly, he does not allege any facts to show that his grievances or lawsuit were motivating factors behind the officers' alleged actions. Moreover,

Walton has not named any specific defendant or other prison official who was personally involved in many of these alleged retaliatory incidents. *Iqbal*, 556 U.S. at 676 (requiring showing of defendant's personal involvement in alleged violation).

Second, Walton's allegations about the timing of his grievances and lawsuit, on the one hand, and the alleged retaliatory actions by named officials, on the other, do not support an inference of retaliation. The lawsuit and grievances were filed in 2022. Walton fails to provide dates for many of the alleged retaliatory events. Moreover, from the record, it appears that most, if not all, of these events occurred in 2023, months after Walton's grievances and lawsuit. Such gaps between the exercise of constitutional rights and the alleged retaliatory acts negates an inference of retaliatory motive. *Hodges*, 2024 WL 3504387, at *7.

For the stated reasons, the court will grant the defendants' Motion to Dismiss as to the retaliation claims.

### IV.

Walton has also filed two motions seeking to amend his claims. In each of these motions, he raises events that occurred during much later time periods and involving different jail officials. He apparently seeks to assert that these other officers perpetrated these later alleged misdeeds to retaliate because he complained and filed a state lawsuit about Brim's theft from his telephone account. The court must dismiss these motions as futile and misjoined.

The motions do not state facts showing that Walton's grievances or lawsuit motivated any of the actions Walton complains of. And the many weeks or months that passed between the grievances and the lawsuit and the alleged retaliatory acts simply cannot support a retaliation claim. *Id.*

Furthermore, the claims alleged in the motions to amend do not concern events or defendants involved in the claims in the initial Complaint as required by the Federal Rules of Civil Procedure provisions regarding joinder of claims and defendants in a single lawsuit. Rule 18(a) allows a plaintiff to only join "as many claims, legal, equitable, or maritime, as the party has against an opposing party"; Rule 20 allows the joinder of several parties in one case only if the claims arose out of the same transaction or occurrence, or series thereof, and contain a question of fact or law common to all the defendants. Plaintiff's multi-issue, multi-defendant motions to amend are inconsistent with these well-established rules. The claims in his motions bear no direct relationship to the events underlying the claims in his original Complaint. They seek to add defendants that have no clear relationship to the defendants and allegations in the Complaint itself. Thus, the court will deny Walton's motions to amend.

## V.

For the reasons stated, the court concludes that Walton's motion seeking production of documents and video must be denied; the defendants' motions to dismiss must be granted; Walton's motions to amend must be denied; and all claims against the administrative and Doe defendants must be summarily dismissed.

The Clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 29th day of August, 2024.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE